# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| State of Missouri, | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:25-cv-00077-JAR |
| United States Department of Health and Human Services; Xavier Becerra, in his official capacity as Secretary of the United States Department of Health and Human Services, | |
| *Defendants*. | |

# MEMORANDUM IN SUPPORT OF
# PROPOSED INTERVENOR-DEFENDANTS' MOTION FOR LEAVE TO INTERVENE

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................................... 1

Proposed Intervenors ...................................................................................................... 2

Legal Standard ................................................................................................................ 3

Argument ......................................................................................................................... 4

    I.    Proposed Intervenors Have Standing To Intervene. ........................................... 4

    II.    Proposed Intervenors Are Entitled To Intervention As Of Right. .................... 7

        a.    Proposed Intervenors' Motion Is Timely. ..................................... 7

        b.    Proposed Intervenors Have A Legally Protectable Interest In This Matter. ................... 8

            i.    The Cities Of Columbus And Madison And DFA's Members Are Regulated By The 2024 Rule. ........................................... 9

            ii.    The Cities Of Columbus And Madison And DFA's Members Have An Interest In The Provider-Patient Relationship. ........................... 10

            iii.    The Cities Of Columbus And Madison And DFA's Members Have An Interest In The Promotion Of Public Health. ........................... 11

            iv.    Proposed Intervenors Will Have To Expend Significant Resources If The 2024 Rule Is Undone. ........................... 12

        c.    Resolution Of This Action Would Practically Impair And Impede Proposed Intervenors' Interests. ........................... 13

        d.    The Government's Representation Of Proposed Intervenors' Interests Is Inadequate. ........................... 13

    III.    Alternatively, This Court Should Permit Proposed Intervenors To Intervene Under Rule 24(b). ........................... 15

Conclusion ...................................................................................................................... 15

i

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Arkansas Med. Soc., Inc. v. Reynolds*, 6 F.3d 519 (8th Cir. 1993) ................................. 7

*Astrazenca Pharms. LP v. Bailey*, No. 2:24-CV-04143-MDH, 2024 WL 4803736 (W.D. Mo. Nov. 15, 2024) ........................................................................................ 8

*Berry v. Ashcroft*, No. 4:22-CV-00465-JAR, 2022 WL 1540287 (E.D. Mo. May 16, 2022) ...................................................................................................................... 8

*Corby Recreation, Inc. v. Gen. Electric Co.*, 581 F.2d 175 (8th Cir. 1978) ............................ 4, 15

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) .................................... 10

*Eckles v. City of Corydon*, 341 F.3d 762 (8th Cir. 2003) ............................................... 6

*Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990 (6th Cir. 2025) ..................................................................................................................... 6

*Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .................................. 5

*Friends of the Boundary Waters Wilderness v. U.S. Army Corps of Eng'rs*, No. 19-CV-2493, 2020 WL 6262376 (D. Minn. Apr. 9, 2020) ...................................... 12

*Granville House, Inc. v. Dep't of Health and Hum. Servs.*, 715 F.2d 1292 (8th Cir. 1983) ...................................................................................................................... 5

*Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416 (5th Cir. 2002) .................... 14

*Henderson v. Black & Decker (U.S.) Inc.*, No. 1:20-cv-00173-ACL, 2021 WL 1546139 (E.D. Mo. Apr. 20, 2021) ............................................................................ 4, 15

*In re Baycol Prods. Litig.*, 219 F.R.D. 468 (D. Minn. 2003) ........................................... 10

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) .......................................................... 11

*Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304 (8th Cir. 1995) ............................................................................................................. 13, 14, 15

*Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993) .................... 7

*Minn. Citizens Concerned for Life v. Fed. Election Comm'n*, 113 F.3d 129 (8th Cir. 1997) ...................................................................................................................... 5

ii

*Mt. Hawley Ins. Co. v. Kaashagen & Sons, Inc.*, No. 17-CV-4465, 2018 WL
11220338 (D. Minn. Apr. 13, 2018) ...................................................................8

*Nat'l Parks Conservation Ass'n v. U.S. Env. Prot. Agency.*, 759 F.3d 969 (8th Cir.
2014)
.........................................................................................3, 4, 5, 6, 7, 12

*Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932 (8th Cir. 2023)......................7

*Republican Nat'l. Comm. v. N. C. State Bd. of Elections*, 120 F.4th 390 (4th Cir.
2024) ...........................................................................................................6

*Sierra Club v. Robertson*, 960 F.2d 83 (8th Cir. 1992) ................................................14

*Trbovich v. United Mine Workers,* 404 U.S. 528 (1972) ...............................................13

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080 (8th Cir. 1999) ..............4

*United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829 (8th Cir. 2009) .................5

*United States v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995) ..................8, 10, 12, 13

*Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019)........................................4

*W. Energy All. v. Zinke*, 877 F.3d 1157 (10th Cir. 2017) ............................................14

*West Virginia v. U.S. Env't Prot. Agency,* No. 3:23-CV-32, 2023 WL 3624685
(D.N.D. Mar. 31, 2023)................................................................................4

**Constitutional Provisions**

Ohio Const. art. XVIII ..................................................................................................2

**Statutes**

5 U.S.C. § 706..............................................................................................................1

42 U.S.C.

§ 1320d-5 ...............................................................................................................9

§ 1320d-6 ...............................................................................................................9

Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191,
110 Stat. 1936 .............................................................................................1

Wis. Stat. §§ 66.0201–03 .............................................................................................2

iii

**Regulations**

45 C.F.R.§ 160.103 ..................................................................................................9

*HIPAA Privacy Rule to Support Reproductive Health Care Privacy*,
    89 Fed. Reg. 32976 (Apr. 26, 2024) ....................................................1, 10, 11, 12

**Rules**

Fed. R. Civ. P. 24 ..............................................................................1, 3, 8, 12, 13, 15

**Other Authorities**

Am. Med. Ass'n, *Opinion 1.1.1 Patient-Physician Relationships*, Code of
    Medical Ethics ....................................................................................................10

Exec. Order No. 14076, 87 Fed. Reg. 42053, 42054 (July 8, 2022)..............................14

Mot. to Hold Deadlines in Abeyance, *Texas v. U.S. Dep't of Health and Hum.*
    *Servs.*, No. 24-cv-00204-H (N.D. Texas Jan. 30, 2025), ECF No. 39....................14

1010850698

**INTRODUCTION**

Proposed Intervenor-Defendants, the City of Columbus, Ohio ("Columbus"); the City of Madison, Wisconsin ("Madison"); and Doctors for America ("DFA") (collectively, "Proposed Intervenors") move to intervene as of right as defendants under Rule 24(a) of the Federal Rules of Civil Procedure to protect their legal interests in upholding the regulation at issue in this case. In the alternative, Proposed Intervenors seek permissive intervention under Rule 24(b).

Missouri challenges a regulation promulgated by the Department of Health and Human Services (the "Department") under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Appx. 032–156 (Pub. L. No. 104-191, 110 Stat. 1936). Missouri alleges that this regulation violates the Administrative Procedure Act (the "APA") because it exceeds the Department's statutory authority and is arbitrary and capricious. Appx. 157–58 (5 U.S.C. § 706(2)). Missouri asks this Court to declare the rule violative of the APA, enjoin its implementation, and set it aside.

The Department promulgated the challenged rule, the *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, to provide heightened protections for sensitive medical information sought to investigate the provision and reception of lawful reproductive health care. Appx. 159–317 (89 Fed. Reg. 32976 (Apr. 26, 2024) (codified at 45 C.F.R. §§ 160, 164)) (the "2024 Rule"). The 2024 Rule offers providers and their patients additional critical assurances and protections at a time when patients are increasingly concerned about the confidentiality of their discussions with and treatment by health care providers.

Proposed Intervenors are entitled to intervene as of right to defend the 2024 Rule. The 2024 Rule regulates health care providers such as the public health departments of Columbus and Madison and, in the case of DFA, its members. It is vital for protecting patient confidentiality and,

1

in turn, ensuring that patients trust their clinicians and that their clinicians can provide them with needed medical care. And fostering trust and honesty between clinicians and their patients is essential to overall public health: accurate data allows providers and public health departments to identify and address troubling public health trends. Proposed Intervenors' motion is timely; absent successful intervention, Proposed Intervenors' interests will be impaired by the relief Missouri seeks; and these unique interests cannot be adequately defended by the federal government, both because the government is unlikely to defend the 2024 Rule now that President Donald J. Trump has taken office and because Proposed Intervenors and the government do not otherwise share a common legal goal. In the alternative, Proposed Intervenors should be permitted to intervene.

## PROPOSED INTERVENORS

*City of Columbus, Ohio.* Proposed Intervenor City of Columbus is a municipal corporation organized under Ohio law. *See* Appx. 318–32 (Ohio Const. art. XVIII). Columbus has all the powers of local self-government and home rule under the Constitution and laws of the State of Ohio, which are exercised in the manner prescribed by the Charter of the City of Columbus. Columbus's public health department, Columbus Public Health, operates HIPAA-covered clinics, expends significant resources ensuring HIPAA compliance by its relevant staff, and provides a wide range of health care services on behalf of its residents, including sexual and reproductive health care.

*City of Madison, Wisconsin.* Proposed Intervenor City of Madison is a municipal corporation organized under Wisconsin law. *See* Appx. 333–40 (Wis. Stat. §§ 66.0201–03). Madison has all the powers of local self-government and home rule under the constitution and laws of Wisconsin, which are exercised in the manner prescribed in the ordinances of the City of

1010850698

Madison. Madison's public health department, Public Health Madison and Dane County,[1] operates as a HIPAA-covered entity, expends significant resources ensuring HIPAA compliance by its relevant staff, and provides a wide variety of health care services to its residents, including sexual and reproductive health care.

***Doctors for America.*** Proposed Intervenor DFA is a nonpartisan, nonprofit organization comprising more than 27,000 physicians, medical students, and other health professionals across the country, representing all medical specialties. DFA members are subject to HIPAA, and they rely on the law's protections to help preserve the physician-patient relationship and maintain trust with their patients. DFA has also engaged in advocacy related to reproductive care and HIPAA.

## LEGAL STANDARD

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as of right and requires intervention be granted where: (1) the motion to intervene is timely; (2) the movant claims an interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may impair or impede the movant's ability to protect that interest; and (4) the movant's interest is inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a); *Nat'l Parks Conservation Ass'n v. U.S. Env. Prot. Agency*, 759 F.3d 969, 975 (8th Cir. 2014).

Federal Rule of Civil Procedure 24(b) allows a court to permit intervention where the movant makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," taking into consideration "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3).

---

[1]    The City of Madison jointly operates Public Health Madison and Dane County with Dane County.

1010850698

In the context of permissive intervention, "[t]he Eighth Circuit has advised district courts to err on the side of intervention." *Henderson v. Black & Decker (U.S.) Inc.*, No. 1:20-cv-00173-ACL, 2021 WL 1546139, at *3 (E.D. Mo. Apr. 20, 2021) (citing *Corby Recreation, Inc. v. Gen. Electric Co.*, 581 F.2d 175, 177 (8th Cir. 1978)). When assessing a motion to intervene, a court "must accept as true all material allegations" and "construe the motion in favor of the prospective intervenor." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 973. "Rule 24 should be construed liberally, with all 'doubts resolved in favor of the proposed intervenor.'" *Id.* at 975 (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)).

## ARGUMENT

### I. Proposed Intervenors Need Not Demonstrate Standing, But In The Alternative Do Have Standing To Intervene.

Because Proposed Intervenors ask only for this Court to refuse to grant the relief sought by Plaintiffs, they need not separately establish standing to intervene as defendants. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (intervenor-defendants need not establish Article III standing if they do not assert counterclaims); *see also West Virginia v. U.S. Env't Prot. Agency*, No. 3:23-CV-32, 2023 WL 3624685, at *2 n.2 (D.N.D. Mar. 31, 2023) (defendant-intervenor not required to show standing where asking court to deny relief on "the plaintiff states' claims" and not "assert[ing] any counterclaim").[2] Nevertheless, Proposed Intervenors easily establish standing in this case.

---

[2] To the extent prior Eighth Circuit decisions required putative intervenor-defendants to establish standing, those decisions are inconsistent with the Supreme Court's decision in *Bethune-Hill*, 587 U.S. at 663.

4

### a. Proposed Intervenors Have Standing On Their Own Behalf.

To establish Article III standing, a prospective intervenor must "allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.'" *Nat'l Parks Conservation Ass'n*, 759 F.3d at 974 (quoting *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009)). The intervenor's alleged injury "must be 'fairly traceable to the defendant's conduct,'" and the intervenor "must establish that a 'favorable decision will likely redress the injury.'" *Id.* at 975 (quoting *Metro. St. Louis Sewer Dist.*, 569 F.3d at 834).

First, Proposed Intervenors face concrete and particularized injury should the 2024 Rule be vacated. Both Madison and Columbus are "covered entities" regulated by the 2024 Rule, and its invalidation would negatively impact the needs of the communities they serve. Appx. 019, 021–22 (Johnson Decl. ¶¶ 15, 26); Appx. 027, 029–30 (Heinrich Decl. ¶¶ 15, 28). "Government regulations that require or forbid some action . . . almost invariably satisfy . . . the injury in fact . . . requirements." *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024); *see also Minn. Citizens Concerned for Life v. Fed. Election Comm'n*, 113 F.3d 129, 131 (8th Cir. 1997). The relief Missouri seeks would also frustrate the primary purpose or mission of each Proposed Intervenor, which is sufficient to establish injury-in-fact. *See Granville House, Inc. v. Dep't of Health and Hum. Servs.*, 715 F.2d 1292, 1298–99 (8th Cir. 1983). If the 2024 Rule is invalidated, patients' trust in Madison and Columbus will be compromised, harming the provider-patient relationship, endangering their ability to provide effective care to their patients, and undermining their public health missions. *See infra* Sections II(b)(iii)–(iv). Invalidation of the 2024 Rule would similarly interfere with DFA's core mission of promoting equity in health care

5

generally and in reproductive health care more specifically.[3]  "[I]f the court grants the relief requested in the complaint, the threat of injury to [Proposed Intervenors] is real" and imminent.  *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975.  Moreover, the "[r]isk of direct financial harm establishes injury in fact."  *Id.* (citing *Eckles v. City of Corydon*, 341 F.3d 762, 768 (8th Cir. 2003)).  If Missouri prevails, Proposed Intervenors will need to spend time and money to comply with state disclosure requirements.  Appx. 019, 021–22 (Johnson Decl. ¶¶ 15, 26); Appx. 027, 029–30 (Heinrich Decl. ¶¶ 15, 28); Appx. 006–07 (Petrin Decl. ¶¶ 14, 17).  Proposed Intervenors will also need to spend time and money to allay the confusion of doctors and patients and provide proper resources to support community members.  *See infra* Section II(b)(iii)–(iv).

Second, Proposed Intervenors' prospective injury is traceable to defendant's conduct.  As in *National Parks Conservation Association*, Proposed Intervenors "can trace [their] injury to the [defendant] through the would-be court order if the [plaintiff] obtain[s] relief."  759 F.3d at 975.  "When the defendant will be compelled to cause the alleged injury to the intervenor if the plaintiff prevails, the intervenor satisfies the traceability requirement even though the defendant and the intervenor seek the same outcome in the case."  *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011).  If Missouri prevails, Defendants will be compelled to injure the Proposed Intervenors by eliminating the protections of the 2024 Rule.

Third, Proposed Intervenors' injury is plainly redressable.  Proposed Intervenors seek to prevent vacatur or enjoinment of the 2024 Rule.  A court's authority to grant relief to intervening

---

[3]    *See also Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990, 993 (6th Cir. 2025); *Republican Nat'l. Comm. v. N. C. State Bd. of Elections*, 120 F.4th 390, 396–97 (4th Cir. 2024).

6

defendants who plan to defend a challenged rule satisfies the redressability prong of the standing analysis. *See Nat'l Parks Conservation Ass'n*, 759 F.3d at 975.

### b. DFA Has Standing On Behalf Of Its Members.

An association has standing on behalf of its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted for relief nor the relief requested requires the participation of individual members in the lawsuit." *Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932, 946–47 (8th Cir. 2023).

DFA meets each of these criteria. First, as health care professionals who are subject to the 2024 Rule and would be concretely harmed by its invalidation, DFA's members have standing to sue in their own right. *See supra* Section I(a). Second, the interests DFA seeks to protect in defending the 2024 Rule are germane to DFA's purpose of improving health care outcomes and reducing health disparities, including with regard to reproductive health. Third, resolution of this case does not require evidence from individual members or a fact-intensive individual inquiry because each member is identically subject to the 2024 Rule, and the Court need only examine HHS's compliance with the APA to determine the merits of Missouri's claims. *See Arkansas Med. Soc., Inc. v. Reynolds*, 6 F.3d 519, 528 (8th Cir. 1993).

## II. Proposed Intervenors Are Entitled To Intervention As Of Right.

### a. Proposed Intervenors' Motion Is Timely.

"In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Mille Lacs Band of Chippewa Indians v. State of*

7

*Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993).  Proposed Intervenors' motion is timely by any measure.

Proposed Intervenors' motion comes within weeks of the commencement of the action, and as soon as intervention was practicable.  And due to the early stage of proceedings, intervention poses no risk of prejudice to the existing parties—the defendants' responsive pleading had not yet been filed, no orders have been entered, no hearings have been scheduled, and no motions have been made.  These facts all weigh in favor of timeliness.  *See Berry v. Ashcroft*, No. 4:22-CV-00465-JAR, 2022 WL 1540287, at *2 (E.D. Mo. May 16, 2022) (granting intervention where sought within weeks of commencement of litigation); *see also United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995) (prejudice arises from delay—not because intervention may cause "the nature, duration, or disposition of the lawsuit to change").

### b.  Proposed Intervenors Have A Legally Protectable Interest In This Matter.

To intervene under Rule 24(a)(2), an intervenor must have a "direct, substantial, and legally protectable" interest in the proceedings, *Union Elec.*, 64 F.3d at 1161 (quotation omitted), "that goes beyond a generalized preference that the case come out a certain way," *Mt. Hawley Ins. Co. v. Kaashagen & Sons, Inc.*, No. 17-CV-4465 (MJD/LIB), 2018 WL 11220338, at *6 (D. Minn. Apr. 13, 2018).  This test is not a stringent one.  *See Union Elec.*, 64 F.3d at 1162.  Organizations may intervene to protect their interests where "[p]roposed [i]ntervenors' members would be subjected to . . . restrictions . . . [that] would impact the needs of their patients or the communities in which they serve.  This is sufficient to show that as a practical matter disposition of the lawsuit without the Proposed Intervenors would impair or impede their members ability to protect their interests." *Astrazenca Pharms. LP v. Bailey*, No. 2:24-CV-04143-MDH, 2024 WL 4803736, at

8

*3 (W.D. Mo. Nov. 15, 2024).  DFA seeks to intervene on behalf of the interests of the organization and on behalf of their individual members.

### i. The Cities Of Columbus And Madison And DFA's Members Are Regulated By The 2024 Rule.

The Proposed Intervenors plainly have a direct and recognized interest in this litigation because their members are protected by the 2024 Rule, and its revocation would interfere with the needs of the communities they serve.  DFA's members include providers who themselves are "covered entities" subject to the 2024 Rule.  Appx. 342–43 (45 C.F.R. § 160.103); Appx. 007 (Petrin Decl. ¶ 10).  DFA's members are subject to both civil and criminal liability for violating HIPAA.  *See* Appx. 351–55 (42 U.S.C. § 1320d-5); Appx. 357 (42 U.S.C. § 1320d-6(b)).  They may also be subject to professional discipline for violating the patient privacy rules of the hospitals and practices in which they work.  *See* Appx. 007 (Petrin Decl. ¶ 11).  And they expend significant time on HIPAA compliance and training.  *See id.*

Similarly, Columbus and Madison operate public health departments that are "covered entities" subject to the 2024 Rule.  Appx. 342–43 (45 C.F.R. § 160.103); Appx. 019 (Johnson Decl. ¶ 15); Appx. 027 (Heinrich Decl. ¶ 15).  Columbus Public Health and Public Health Madison and Dane County operate a number of outpatient clinics and treat thousands of patients each year.  Appx. 018 (Johnson Decl. ¶ 10); Appx. 026 (Heinrich Decl. ¶ 10).  They too devote staff time and resources to HIPAA compliance and training.  *See* Appx. 019–20 (Johnson Decl. ¶¶ 16–18); Appx. 27 (Heinrich Decl. ¶ 16); Columbus Public Health has already devoted staff time toward implementing the 2024 Rule.  Appx. 021 (Johnson Decl. ¶ 25).  That the public health departments of Columbus and Madison and DFA's members are regulated by the 2024 Rule gives them "direct,

9

substantial, and legally protectable" interests in the outcome of this litigation.  *See Union Elec. Co.*, 64 F.3d at 1161.  No further inquiry is needed.

### ii.  The Cities Of Columbus And Madison And DFA's Members Have An Interest In The Provider-Patient Relationship.

Proposed Intervenors have an additional interest in maintaining and strengthening the trust at the heart of the provider-patient relationship.  Courts have long recognized the need to "preserve the complete trust between doctor and patient which is essential to the successful treatment of the patient's condition" and "allay[] a patient's fears that his doctor may be disclosing personal confidences."  *In re Baycol Prods. Litig.*, 219 F.R.D. 468, 471 (D. Minn. 2003).[4]  That is because the provision of effective care depends on the sharing of sensitive health information, which will only occur where patients trust that their information will be kept confidential.  Appx. 008 (Petrin Decl. ¶ 13); Appx. 013–14 (Oller Decl. ¶¶ 9–13); Appx. 020 (Johnson Decl. ¶ 19); Appx. 027–28 (Heinrich Decl. ¶ 20).  Put simply, "[h]igh-quality health care cannot be attained without patient candor."  Appx. 172 (89 Fed. Reg. at 32985 (Apr. 26, 2024)).

The risks to the provider-patient relationship have only increased since the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), as providers and patients now fear facing investigations into the legal treatment they provide and receive. Appx. 009 (Petrin Decl. ¶ 16); Appx. 013 (Oller Decl. ¶ 12); Appx. 174–76 (89 Fed. Reg. at 32987– 88 (Apr. 26, 2024)).  Fears that sensitive health information will be used by law enforcement endangers the provider-patient relationship and causes patients to withhold information.  *See* Appx. 009 (Petrin Decl. ¶¶ 16–17); Appx. 013 (Oller Decl. ¶¶ 11–12).

---

[4]  For centuries, the provider-patient relationship has been at the heart of medical practice.  This relationship has an ethical foundation and is built on trust.  *See* Appx. 359 (Am. Med. Ass'n, *Opinion 1.1.1 Patient-Physician Relationships*, Code of Medical Ethics).

10

Patient trust is especially vital to the Columbus and Madison public health departments, which serve as providers of last resort in their communities and routinely treat patients from historically marginalized populations. Appx. 020 (Johnson Decl. ¶ 20); Appx. 026, 028 (Heinrich Decl. ¶¶ 12, 22). "[M]edical mistrust—especially in communities of color and other communities that have been marginalized or negatively affected by historical and current health care disparities—can create damaging and chilling effects on individuals' willingness to seek appropriate and lawful health care for medical conditions that can worsen without treatment." Appx. 172–73 (89 Fed. Reg. at 32985 (Apr. 26, 2024)). Patients seek out care from Columbus Public Health and Public Health Madison and Dane County instead of a family physician to preserve their anonymity and avoid stigma that can be associated with particular statuses (e.g., survivors of intimate partner violence) or health conditions (e.g., sexually transmitted infections). *See* Appx. 020 (Johnson Decl. ¶ 21); Appx. 028 (Heinrich Decl. ¶¶ 23–24). For these patients especially, trust that their personal health information will remain confidential is paramount.

### iii. The Cities Of Columbus And Madison Have An Interest In The Promotion Of Public Health.

Columbus and Madison also have an interest in promoting the public health of their communities. Courts have long recognized the interest of local governmental bodies to protect public health. *See*, *e.g.*, *Jacobson v. Massachusetts*, 197 U.S. 11, 27–28 (1905). Protecting individual privacy while promoting public health is an express purpose of HIPAA and the 2024 Rule. Appx. 164 (89 Fed. Reg. at 32978). "Barriers that undermine the willingness of individuals to seek health care in a timely manner or to provide complete and accurate health information to their health care providers undermine the overall objective of public health." Appx. 172 (89 Fed. Reg. at 32985 (Apr. 26, 2024)).

Columbus Public Health and Public Health Madison and Dane County are the public health authorities for their jurisdictions and are responsible for preventing disease and improving the overall health of their residents. *See* Appx. 017 (Johnson Decl. ¶ 8); Appx. 025 (Heinrich Decl. ¶ 3). The cities' ability to identify and address concerning health trends depends, in part, on the willingness of patients to seek care and be honest with public health department providers. Appx. 020–21 (Johnson Decl. ¶ 23); Appx. 029 (Heinrich Decl. ¶ 26); Appx. 172 (89 Fed. Reg. at 32985 (Apr. 26, 2024)). The cities' interest in vindicating their public health mandates gives them direct interest in this litigation. *See Union Elec. Co.*, 64 F.3d at 1161.

### iv. DFA Will Have To Expend Significant Resources If The 2024 Rule Is Undone.

An organization satisfies Rule 24(a)(2)'s interest requirement where it has "invested significant financial resources" on efforts that may be impacted by the outcome of the proceedings, *Friends of the Boundary Waters Wilderness v. U.S. Army Corps of Eng'rs*, No. 19-CV-2493 (PJS/LIB), 2020 WL 6262376, at *7 (D. Minn. Apr. 9, 2020), or has a "financial stake in the litigation." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 976. There is no question that DFA surpasses this threshold.

DFA spends significant resources advocating on behalf of providers for accessible, equitable health care at the local, state, and federal levels. It also provides resources and trainings, including HIPAA-specific resources, for its members on legal and policy issues. *See* Appx. 006–07 (Petrin Decl. ¶¶ 7–8). And, in 2022, DFA co-founded the Reproductive Health Coalition, a group of more than a hundred health professional organizations specifically focused on protecting access to reproductive care. Appx. 007 (Petrin Decl. ¶ 9). If the 2024 Rule were to fall, DFA would be required to expend significant resources advocating for increased privacy protections

12

elsewhere (for example, at the state level) and educating and training its members on the reworked legal landscape. *See* Appx. 009 (Petrin Decl. ¶ 17). This amounts to a "direct" and "substantial" interest in the litigation. *Union Elec. Co.*, 64 F.3d at 1161.

### c. Resolution Of This Action Would Practically Impair And Impede Proposed Intervenors' Interests.

An intervenor must demonstrate that the disposition of the case may "impair or impede the applicant's ability to protect" its interests. *Union Elec.*, 64 F.3d at 1157 (*quoting* Fed. R. Civ. P. 24(a)). This is a low threshold. Proposed Intervenors need only demonstrate that their interests "may be" impaired, not that they necessarily "would be." *Union Elec.*, 64 F.3d at 1161 (*citing Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995)).

If the 2024 Rule is vacated, in addition to the erosion of the provider-patient relationship and undermining of Columbus and Madison's public health missions described above, Proposed Intervenors will need to spend time and money to reassess their obligations and assuage confusion that would likely result. If Plaintiffs are afforded even part of their sweeping request for relief, Proposed Intervenors would be bound by the judgment. *See Kan. Pub. Emps. Ret. Sys.*, 60 F.3d at 1307. Precluding Proposed Intervenors from involvement in this litigation would significantly impede and impair their abilities to protect the interests they have outlined.

### d. The Government's Representation Of Proposed Intervenors' Interests Is Inadequate.

Proposed Intervenors need only make "a minimal showing" that the government's representation of their interests "*may be* inadequate." *Kan. Pub. Emps. Ret. Sys.*, 60 F.3d at 1308 (emphasis added) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). This is true even where the defendants and intervenor are "directed at a common legal goal." *Kan. Pub. Emps. Ret. Sys.*, 60 F.3d at 1308–09. Adequacy is assessed by comparing "the interests of

13

the proposed intervenor with the interests of the current parties to the action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Proposed Intervenors plainly meet this threshold.

Proposed Intervenors have ample reason to believe the government will imminently abandon its defense of the 2024 Rule and thus will not share a "common legal goal" with Proposed Intervenors. *Kan. Pub. Emps. Ret. Sys.*, 60 F.3d at 1309. In parallel litigation challenging the 2024 Rule under the same legal claims that Plaintiff articulates here, the U.S. government has already moved to hold the case in abeyance so that it can reevaluate the positions of the prior administration. *See* Mot. to Hold Deadlines in Abeyance, *Texas v. U.S. Dep't of Health and Hum. Servs.*, No. 24-cv-00204-H (N.D. Texas Jan. 30, 2025), ECF No. 39. President Trump has also issued an Executive Order rescinding a Biden-era Order which directed the Department to consider actions, including under HIPAA, "to strengthen the protection of sensitive information related to reproductive healthcare services and bolster patient-provider confidentiality." Appx. 390 (Exec. Order No. 14076, 87 Fed. Reg. 42053, 42054 (July 8, 2022)). Further, key figures tasked with planning the new administration's agenda—including presumptive new Department Secretary Robert F. Kennedy, Jr.—have opposed similar Department efforts to protect reproductive health information. *See*, *e.g.*, Appx. 366–68, 374, 377, 385. The Trump administration has also already erased information about HIPAA protections for reproductive rights from the Department's website. Appx. 386–88.

If, as expected, the Department imminently abandons its defense of the 2024 Rule, Proposed Intervenors and existing Defendants will not share the same ultimate goal of maintaining it. At the very least, the Trump administration's actions and statements to date "raise[] 'the possibility of divergence of interest' or a 'shift' during litigation." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017); *see also Heaton v. Monogram Credit Card Bank of Georgia*,

14

297 F.3d 416, 425 (5th Cir. 2002) ("That the [intervenor's] interests and [existing party's] may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the [intervenor's] burden on this issue."). This potential divergence alone is sufficient to meet the "minimal" showing required here. *See Kan. Pub. Emps. Ret. Sys.*, 60 F.3d at 1308.

### III. Alternatively, This Court Should Permit Proposed Intervenors To Intervene Under Rule 24(b).

Federal Rule of Civil Procedure 24(b) provides that a court may permit intervention where an intervenor makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," taking into consideration "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). Courts have discretion to grant permissive intervention, and "[t]he Eighth Circuit has advised district courts to err on the side of intervention." *Henderson*, 2021 WL 1546139, at *3 (citing *Corby Recreation, Inc.*, 581 F.2d at 177). On all counts, Proposed Intervenors should be permitted to intervene permissively if they are not entitled to under Rule 24(a)(2).

First, as explained above, Proposed Intervenors motion is timely. *See* Section II(a) *supra*. Second, Proposed Intervenors seek to take up a position (defending the 2024 Rule) and arguments that they believe the federal government will shortly abandon. If the new administration does not abandon its defense of the 2024 Rule, Proposed Intervenors' specific interests still easily satisfy this requirement. *See* Section II(b) *supra*. Lastly, intervention here would not cause any delay or prejudice, as this litigation is in its nascent stages. *See* Section II(a) *supra*.

### CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that this Court grants their motion for leave to intervene under Rule 24(a), or, in the alternative, Rule 24(b).

1010850698

Date:   February 10, 2025

Respectfully submitted,
*/s/ Sharon B. Rosenberg*
Sharon B. Rosenberg
THOMPSON COBURN LLP
One U.S. Bank Plaza
St. Louis, MO 63101
(314) 552-6173
(314) 552-7000
srosenberg@thompsoncoburn.com
*Counsel to Intervenor-Defendants*

-and-

Shannon Rose Selden – *Pro Hac Vice Pending*
Zachary H. Saltzman – *Pro Hac Vice Pending*
Adam Aukland Peck – *Pro Hac Vice Pending*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000 (phone)
(212) 909-6836 (fax)
srselden@debevoise.com
zhsaltzm@debevoise.com
aauklandpeck@debevoise.com

*Counsel to Intervenor-Defendants*

-and-
Anna A. Moody – *Pro Hac Vice Pending*
Gabriel A. Kohan – *Pro Hac Vice Pending*
Suzanne Zakaria – *Pro Hac Vice Pending*
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue NW
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)
amoody@debevoise.com
gakohan@debevoise.com
szakaria@debevoise.com

*Counsel to Intervenor-Defendants*

Carrie Y. Flaxman – *Pro Hac Vice Pending*
Madeline H. Gitomer – *Pro Hac Vice Pending*
Emma R. Leibowitz – *Pro Hac Vice Pending*
DEMOCRACY FORWARD
P.O. Box 34553
Washington, DC 20043
(202) 448-9090 (phone)
cflaxman@democracyforward.org
mgitomer@democracyforward.org
eleibowitz@democracyforward.org

*Counsel to Intervenor-Defendants*

-and-

Aisha Rich – *Pro Hac Vice Pending*
Shannon Eddy – *Pro Hac Vice Pending*
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, California 94609
(510) 214-6960 (phone)
aisha@publicrightsproject.org
shannon@publicrightsproject.org

*Counsel to City of Columbus and City of Madison*