IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STATE OF MISSOURI,

    *Plaintiff*,

    v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

    *Defendants*.

Case No. 4:25-cv-00077-JAR

**MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE TO INTERVENE**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... iii

Introduction ........................................................................................................................ 1

Background ........................................................................................................................ 2

Standard of Review ........................................................................................................... 3

Argument ............................................................................................................................ 4

    I.   Proposed Intervenor's Motion is Procedurally Deficient. ................................. 4

    II.  Proposed Intervenors Lack Article III Standing. .............................................. 4

    III. Proposed Intervenors Have Not Established Intervention as of Right. ........... 10

        A.  Proposed Intervenors do not have direct, substantial, and legally protectable legal interest in this matter. ...................................... 11

        B.  Defendants adequately represent Proposed Intervenors. ........................... 11

    IV. The Court Should Deny Permissive Intervention. .......................................... 12

Conclusion ....................................................................................................................... 14

Certificate of Service & Compliance ............................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Am. Contractors, Indem. Co. v. Bank of Sullivan*, No. 4:19-CV-2381 NAB,
2020 WL 2512208 (E.D. Mo. May 15, 2020) ............................................................ 4

*Arkansas ACORN Fair Hous., Inc. v. Greystone Dev., Ltd. Co.*, 160 F.3d 433 (8th Cir. 1998) .... 7

*Brown v. Colegio de Abogados de Puerto Rico*, 277 F.R.D. 73 (D.P.R. 2011) ............................. 4

*CASA de Maryland, Inc. v. Trump*, 971 F.3d 220 (4th Cir. 2020) ................................................ 7, 9

*Chiglo v. City of Preston*, 104 F.3d 185 (8th Cir. 1997) ........................................................ *passim*

*City of Clarkson Valley v. Mineta*, No. 4:04-cv-00301, 2008 WL 11512303 (E.D. Mo. Apr. 22, 2008) ......................................................................................................................... 6, 7

*City of Olmstead Falls, Oh. v. Fed. Aviation Admin.*, 292 F.3d 261 (D.C. Cir. 2002) ............... 6, 8

*Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) ................................................................ 5

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ................................................... 2

*Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069 (8th Cir. 2023) ..................................... 1, 3, 11

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ..................................................... 5, 6, 7, 8

*FTC v. Johnson*, 800 F.3d 448 (8th Cir. 2015) ............................................................................ 4

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................................................. 7

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ................................. 7, 9

*Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304 (8th Cir. 1995) .... 11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ....................................................................... 9, 10

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) .......................................................................... 6

*Nat'l Fed'n of Blind of Missouri v. Cross*, 184 F.3d 973 (8th Cir. 1999) ..................................... 8

*Nat'l Parks Conservation Ass'n v. E.P.A.*, 759 F.3d 969 (8th Cir. 2014) ................................... 10

*New Life Evangelistic Ctr., Inc. v. City of St. Louis, Mo.*, 2015 WL 2383499 (E.D. Mo. May 19, 2015) ............................................................................................................................... 13

*North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918 (8th Cir. 2015) .......................... 12

*Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26 (1976) ...................................... 10

*South Dakota ex rel. Barnett v. U.S. Dept. of Interior*, 317 F.3d 783 (8th Cir. 2003) ............... 3, 12

*Tennessee v. EEOC*, 129 F.4th 452 (8th Cir. 2025) ......................................................................... 6

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994) ....................................................... 3

*United States v. Reilly Tar & Chem. Corp.*, 43 F.4th 849, (8th Cir. 2022) ............................. 1, 3, 5

*United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669 (1973) ...... 6

*United States v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995) ............................................... 1, 11

*Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019) ................................................ 5

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n,* 834 F.3d 562 (5th Cir. 2016) ........ 9

**RULES**

Fed. R. Civ. P. 24 ...................................................................................................................... 3, 10

Local Rule 7.1 ............................................................................................................................ 2, 4

**FEDERAL REGULATIONS**

45 C.F.R. § 164.502 ........................................................................................................................ 2

45 C.F.R. § 164.512 ...................................................................................................................... 10

45 CFR § 160.203 .................................................................................................................... 5, 10

**INTRODUCTION**

An activist organization, Doctors for America ("DFA"), and two out-of-circuit municipalities—the Cities of Columbus, Ohio, and Madison, Wisconsin—move to intervene as Defendants. They seek to participate based on mere speculation that the Federal Government *might*, in the future, decide to stop defending the challenged federal regulation—*HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32976 (Apr. 26, 2024). But Federal Rule of Civil Procedure 24(a) demands more than speculation. To intervene as of right, Proposed Intervenors must establish that they: have standing, have a "direct, substantial, and legally protectable" interest in the action, and are "not adequately represented by the existing parties." *United States v. Reilly Tar & Chem. Corp.*, 43 F.4th 849, 854–55 (8th Cir. 2022); *Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023); *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995). Proposed Intervenors fail all three.

*First*, their asserted injuries are not cognizable. The cities argue that they have an interest in *being* regulated. But if they like the mandates required by the Final Rule, they can adopt those mandates on their own even if the federal rule is vacated. So any injury is self-inflicted. Trying to evade this problem, Proposed Intervenors assert an "interest in maintaining and strengthening . . . trust," but that vague interest is held at most only by absent third parties. That is not cognizable under Eighth Circuit precedent. Similarly, the Supreme Court made clear just last year that DFA's "diversion-of-resources" theory is not cognizable.

*Second*, for the same reasons, Proposed Intervenors cannot show a "direct, substantial, and legally protectable" interest.

*Third*, on adequacy of representation, Proposed Intervenors purport to meet a "minimal" burden of inadequacy. But this standard is inapplicable when, as here, the Government is the defending party. *See Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997). Under these

circumstances, adequate representation is presumed, which an applicant can overcome only through specific showings. *Id.* Proposed Intervenors offered no argument that this presumption should be overcome. That is fatal.

Permissive intervention is just as improper. Proposed Intervenors have neither established standing nor overcome the strong presumption that the Government Defendants adequately represent the public. A finding to the contrary would open the floodgates to permissive intervention whenever private third parties "merely disagree[d] with the litigation strategy or objectives" of Government defendants. *Chiglo*, 104 F.3d at 188.

Beyond a failure to meet the requirements for intervention under Rule 24, Proposed Intervenors' motion is also deficient on procedural grounds because it disregards the mandates of Rule 7.1(a)(1) and 24(c), as well as Local Rule 2.09. The motion should be denied.

## BACKGROUND

In response to *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), the Federal Government promulgated the Final Rule, which limits what information a covered entity may disclose if, in the entity's view, the information is related to "reproductive healthcare," as defined by 45 C.F.R. § 164.502(a)(5)(iii).

On January 17, 2025, Missouri filed this action alleging that the Final Rule exceeds the Department's authority and is arbitrary and capricious. ECF 1, ¶¶ 90–115. On February 10, 2025, before counsel for Government Defendants even made an appearance, Proposed Intervenors moved for leave to intervene. ECF 5, 6.[1] On February 24, 2025, counsel for Defendants entered

---

[1] Proposed Intervenors have taken this same approach in at least three other cases across the country. *See Purl v. HHS*, No. 2:24-cv-00228 (N.D. Tex.), ECF No 48 (motion for leave to intervene filed Jan. 17, 2025); *Texas v. HHS*, No. 5:24-cv-00204 (N.D. Tex.), ECF 26 (motion to intervene filed Jan. 17, 2025); *Tennessee v. HHS*, No. 3:25-cv-00025 (E.D. Tenn.), ECF 31 (motion to intervene filed Feb. 10, 2025). To date, no court has granted leave to intervene.

2

an appearance and filed a Notice "to clarify for the Court their understanding of the current briefing schedule." ECF 21, 22. The next day, this Court entered an Order directing counsel for the Parties and Proposed Intervenors "to confer and submit within seven days a proposed briefing schedule on the pending motion to intervene." ECF 23. The Parties and Proposed Intervenors filed a joint proposal on March 4, 2025. ECF 24. On March 5, 2025, the Court adopted the joint proposal, and ordered that the Parties file responses to the motion for leave to intervene by April 14, 2025, and that Proposed Intervenors file a reply by April 28, 2025. ECF 25. On March 31, 2025, Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and a brief in support. ECF 30, 31.

## STANDARD OF REVIEW

A party seeking to intervene must "meet the elements of Article III standing plus the requirements of Federal Rule of Civil Procedure 24." *Reilly Tar*, 43 F.4th at 854–55. To intervene as of right, a movant must show "(1) its motion is timely, (2) it has an interest in the subject matter of the litigation, (3) disposition of the case may impair that interest, and (4) existing parties do not adequately protect that interest." *Entergy Arkansas*, 76 F.4th at 1071.

Rule 24(b) allows permissive intervention "[u]pon timely application . . . when an applicant's claim or defense and the main action have a question of law or facts in common." Fed. R. Civ. P. 24(b). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *South Dakota ex rel. Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 787 (8th Cir. 2003) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)). But "[t]he decision to grant or deny a motion for permissive intervention is wholly discretionary," and the Court may properly rely on considerations beyond undue delay and prejudice to deny permissive intervention,

including the adequacy of representation. *Id.* (citations omitted). Proposed Intervenors bear the burden of proof and persuasion. *See, e.g.*, *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015).

## ARGUMENT

### I. Proposed Intervenor's Motion is Procedurally Deficient.

Proposed Intervenors must file "a pleading that sets out the claim or defense for which intervention is sought." FRCP 24(c). The pleading requirement of Rule 24(c) "is not merely a procedural formality, but is integral to the Court's necessary analysis of the legal rights asserted . . . and concomitant issues such as standing and jurisdiction." *Am. Contractors, Indem. Co. v. Bank of Sullivan*, No. 4:19-CV-2381 NAB, 2020 WL 2512208, at *2 (E.D. Mo. May 15, 2020). Indeed, this Court has held that "failure to comply with Rule 24(c)'s important requirement serves as grounds to deny the [proposed intervenors] motion to intervene." *Am. Contractors, Indem. Co. v. Bank of Sullivan*, No. 4:19-CV-2381 NAB, 2020 WL 2512208, at *3 (E.D. Mo. May 15, 2020) (collecting cases); *see also Brown v. Colegio de Abogados de Puerto Rico*, 277 F.R.D. 73, 76–77 (D.P.R. 2011) ("The requirements under Rule 24(c) are mandatory."). Because Proposed Intervenors did not submit a proposed pleading, their motion should be denied.[2]

Additionally, DFA was required "file a statement that" identifies its ownership interests "with its first . . . motion"—*i.e.*, the application for leave to intervene. FRCP 7.1(a), (b)(1); *see also* L.R. 2.09(C)(1). It failed to do so and thus should not be permitted to intervene.

### II. Proposed Intervenors Lack Article III Standing.

Proposed Intervenors lack standing. The Eighth Circuit requires parties seeking to intervene to "meet the elements of Article III standing *plus* the requirements of Federal Rule of

---

[2] Proposed Intervenors' failure to file a proposed responsive pleading is all the more perplexing because they complied with Rule 24(c) in *Texas v. HHS* by filing a proposed answer. *See* No. 5:24-cv-00204 (N.D. Tex.) ECF 26-3 & 26-4 (filed Jan. 17, 2025).

4

Civil Procedure 24." *Reilly Tar*, 43 F.4th at 854–55 (emphasis added). Proposed Intervenors contend that *Reilly Tar*'s requirement is inconsistent with *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). But Proposed Intervenors acknowledge that *Bethune-Hill* does not directly adopt their interpretation (hence their use of the *see* cite), and *Reilly Tar* postdates *Bethune-Hill*. The Eighth Circuit has continued to require proposed intervenors to establish standing years after *Bethune-Hill* notwithstanding Proposed Intervenors' interpretation. It is the Eighth Circuit's interpretation of precedent, not Proposed Intervenors', that controls.

A litigant lacks Article III standing unless they can show they face an injury in fact caused by the challenged conduct and that would be redressed by the relief sought. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Proposed Intervenors do not suffer an injury in fact, and do not satisfy the traceability requirement.

**A. Proposed Intervenors have not established injury in fact.**

Proposed Intervenors suggest four theories of injury. None survives.

**1.** They first rely (at 5) on a purported harm to absent third parties that is entirely within control of the cities to mitigate. They allege that "Madison and Columbus are 'covered entities' regulated by the 2024 Rule, and its invalidation would negatively impact the needs of the communities they serve." That fails because that injury (if it is an injury) is self-inflicted. Nothing prohibits the cities from voluntarily adopting the policies of the Final Rule. Indeed, HIPAA expressly permits healthcare entities (including States and localities0 to adopt policies "more stringent" than HIPAA. 45 CFR § 160.203(b). If Proposed Intervenors do so, their alleged injury will disappear. Their "self-inflicted injuries" are not cognizable. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 418 (2013).

5

Even if the injury were cognizable, it would not belong to the Proposed Intervenors. They allege (at 6) that vacatur would "eliminat[e] the protections of the 2024 Rule." To the extent this is an injury sufficient for standing, the injury belongs to those who receive the protections of the rule—*i.e.,* patients. Moreover, cities cannot rely on *parens patriae* for standing because the Federal Government is a party to this suit. *City of Clarkson Valley v. Mineta*, No. 4:04-cv-00301, 2008 WL 11512303, at *5 (E.D. Mo. Apr. 22, 2008) (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923), and *City of Olmstead Falls, Oh. v. Fed. Aviation Admin.*, 292 F.3d 261, 268 (D.C. Cir. 2002)). The Supreme Court has "stress[ed] the importance of demonstrating that the party seeking review be himself among the injured." *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 687 (1973). "[T]he judicial process [is not] a vehicle for the vindication of the value interests of concerned bystanders." *Id.*

Nor can the Proposed Intervenors establish standing because of their status as regulated parties. Status as a regulated party is sufficient to establish standing to *challenge* the regulation, not *support* it. The Eighth Circuit has said that regulated parties have "a concrete interest . . . in *avoiding* regulatory obligations above and beyond those that can be statutorily imposed upon them." *Tennessee v. EEOC*, 129 F.4th 452, 457 (8th Cir. 2025) (emphasis added). As the Supreme Court stated in *Alliance for Hippocratic Medicine*, "[g]overnment regulations *that require or forbid some action by the plaintiff* almost invariably satisfy both the injury in fact and causation requirements." 602 U.S. at 382 (emphasis added). Proposed Intervenors, in contrast, contend they are injured by *removal* of regulatory burdens. But just last year, the Supreme Court made clear that there generally is no standing to challenge the "loosening" of "requirements." *Id.* at 391.

**2.** No better is Proposed Intervenors' theory (at 5) that vacatur of the Final Rule will harm their "primary purpose or mission." To start, this is an associational standing theory, and it does

6

not apply to cities. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977) (finding entity must be "voluntary membership organization" or have "indicia of membership"); *see also City of Clarkson Valley*, 2008 WL 11512303, at *5 (E.D. Mo.) ("A municipal plaintiff like the City differs from an organizational plaintiff like the Sierra Club in that a city is not a voluntary association and cannot be said to have a clear "purpose" comparable to that of an organization such as the Sierra Club."). The cities are not membership organizations and do not have indicia of membership, but are each, as alleged, "a municipal corporation organized under" their States' law. ECF 6 at 2. Moreover, it strains credulity to suggest that the ability of the cities' health "to provide effective care to their patients" is the "primary purpose or mission" of cities themselves. ECF 6 at 5.

As for the public advocacy organization, DFA, Proposed Intervenors suggest (at 5) that vacatur would "interfere with DFA's core mission of promoting equity in health care generally and in reproductive health care more specifically." This purported injury allegedly relates to DFA's "advocacy related to reproductive health care." ECF 6 at 3. This pure policy interest in insufficient for standing. A party must show "more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). "Organizational injury, properly understood, is measured against a group's ability to *operate* as an organization, not its theoretical ability to *effectuate* its objectives in its ideal world." *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 239 (4th Cir. 2020). The alleged injury to DFA does not go to its "core" ability to operate, *All. for Hippocratic Med.*, 602 U.S. at 395, but rests solely on a purported interest in effectuating its policy goals.

In *Arkansas ACORN Fair Hous., Inc. v. Greystone Dev., Ltd. Co.*, the Eight Circuit rejected a nearly identical argument to what Proposed Intervenors raise here, finding a plaintiff did not

7

have standing for alleged impairment to its "ability to promote fair housing . . . and . . . help minority home seekers." 160 F.3d 433, 434 (8th Cir. 1998); *see also All. for Hippocratic Med.*, 602 U.S. at 381 (finding a litigant does not suffer an injury in fact simply because they have "a general legal, moral, ideological, or policy objection to a particular government action"). Moreover, Proposed Intervenors offer no evidence that vacatur of the Final Rule "interferes with [DFA's advocacy] activities" to begin with. *See Nat'l Fed'n of Blind of Missouri v. Cross*, 184 F.3d 973, 980 (8th Cir. 1999). Whether the Final Rule remains or is vacated does not affect whether DFA can "promote" or "advoca[te]" its policy interests.

**3.** Proposed Intervenors next assert (at 6) that they "will need to spend time and money to comply with state disclosure requirements." This argument is easily rejected.

With respect to the cities, Madison and Columbus cannot defend the federal rule on the ground that it saves them from complying with the laws of Wisconsin and Ohio. These "municipalities derive their existence from the state and function as political subdivisions of the state." *City of Olmstead Falls*, 292 F.3d at 268. They cannot complain about having to follow the rules of their parent organization.

The argument also easily falls flat with respect to DFA. It complains (at 6) about having to divert resources "to allay the confusion of doctors" and "provide proper resources to support community members." But the Supreme Court rejected exactly this argument last year. In response to the assertion that "standing exists when an organization diverts its resources in response to a defendant's actions," the Supreme Court flatly declared, "That is incorrect." *All. for Hippocratic Med.*, 602 U.S. at 395. Similarly, DFA insists (at 12) that "[i]f the 2024 Rule were to fall, DFA would be required to expend significant resources advocating for increased privacy protections elsewhere." That diversion-of-resources theory failed last year at the Supreme Court.

*Id.* And vacating the Final Rule would not "require" DFA to advocate anything. Policy advocacy is a voluntary undertaking and thus not sufficient for standing. *See CASA*, 971 F.3d at 239 (4th Cir. 2020) ("Resource reallocations motivated by the dictates of preference, however sincere, are not cognizable organizational injuries because no action by the defendant has directly impaired the organization's ability to operate and to function.").

**4.** Finally, Proposed Intervenors assert (at 7) that DFA has standing on behalf of its members. To establish associational standing, an association must show: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. DFA's members lack standing to sue in their own right. As discussed above, vacatur of the Final Rule would result in *less* regulation on DFA's members. The members' purported concerns about "civil and criminal liability for violating HIPAA," and "professional discipline for violating the patient privacy rules of the hospitals in which they work," ECF 6 at 9, would be *alleviated* by vacatur of the Final Rule. Again, the lack of regulatory obligations is not a sufficient basis for standing. Moreover, while subject to HIPAA, DFA's members are not the intended beneficiary of the Final Rule (their patients are), so the members do not suffer an injury from vacatur. *See, e.g.*, *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n,* 834 F.3d 562, 569 (5th Cir. 2016).

### B. The alleged injuries are not fairly traceable to vacatur of the Final Rule.

To the extent any of the alleged harms is even an injury, none is traceable to vacatur of the Final Rule. Standing requires "a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). An injury has to be "fairly . . . trace[able] to the challenged action . . . and not . . . th[e] result [of] the independent action of some

third party not before the court." *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976)). Proposed Intervenors assert that their injury—*i.e.*, disclosure of patient records—is traceable to the challenged action—*i.e.*, vacating the Final Rule. This fails twice over. *First*, as discussed above, HIPAA expressly permits entities to adopt policies more protective than HIPAA. 45 CFR § 160.203(b). They can adopt the standards of the Final Rule if they choose. *Second*, also as discussed above, their alleged injury is *wholly* associated with patients. HIPAA does not "protect" the Proposed Intervenors, and thus some future possibility that records may be sought does not create injury. *Third*, that injury is not fairly traceable to vacatur of the Final Rule because such injury would be "the result of the independent actions of some third party." *Defs. of Wildlife*, 504 U.S. at 560 (cleaned up). Notably, HIPAA does not obligate a provider to disclose patient medical records, but states that a covered party "*may* use or disclose protected health information" under certain enumerated circumstances. 45 C.F.R. § 164.512. As Proposed Intervenors acknowledge (at 6), disclosure could not be compelled unless there was an intervening "state disclosure requirement[ ]." Madison and Columbus cannot come to federal court to complain about the laws of their own States, and to the extent DFA dislikes state laws, its injury stems from those laws, not vacatur of the Final Rule.

### III. Proposed Intervenors Have Not Established Intervention as of Right.

"Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit anyone to intervene who: (1) files a timely motion to intervene; (2) 'claims an interest relating to the property or transaction that is the subject of the action'; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties." *Nat'l Parks Conservation Ass'n v. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014) (quoting Fed. R. Civ. P. 24(a)(2)). Proposed Intervenors have not met the requirements of Rule 24(a) because they have not established a sufficient interest in the

matter, and even if they have, they are adequately represented by the Government defendants, who have already moved to dismiss.

### A. Proposed Intervenors do not have direct, substantial, and legally protectable legal interest in this matter.

Intervention as of right requires "direct, substantial, and legally protectable" interest in the proceedings. *Union Elec. Co.*, 64 F.3d at 1161 (collecting cases). As discussed above (Section II.A), Proposed Intervenors have not established a direct, substantial, and legally protectable interest. To the contrary, they have attempted to assert injuries belonging to absent third parties, from *de-regulation*, of a noncognizable "interest in maintaining and strengthening . . . trust" between providers and patients. These are insufficient to meet the second prong for intervention as of right.

### B. Defendants adequately represent Proposed Intervenors.

Even if the Proposed Intervenors could establish a direct, substantial, and legally protectable legal interest in this case, existing parties adequately represent Proposed Intervenors' interests. Proposed Intervenors argue (at 13) that they "need only make a 'minimal showing' that the government's representation of their interests '*may be* inadequate.'" (citing *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308 (8th Cir. 1995)). That is wrong.

Under well-established Eighth Circuit precedent, the "minimal" burden falls away "if an existing party to the suit is charged with the responsibility of representing the intervenor's interests [*i.e.* "an arm or agency of the government"], [and] a presumption of adequate representation arises." *Chiglo*, 104 F.3d at 188. A proposed intervenor can overcome this presumption only by showing (1) "that it stands to gain or lose from the litigation in a way different from the public at large," or (2) "that its interest is narrower and more parochial than the government's." *Entergy Arkansas*, 76 F.4th at 1071–72 (cleaned up).

11

Proposed Intervenors have not met their burden under this fourth prong because they "made no effort to rebut the presumption of adequate representation except to say that [Defendants interests "potential[ly] diverge[ ]." *Chiglo*, 104 F.3d at 188. Proposed Intervenors have neither argued that they "stand[ ] to gain or lose from the litigation in a way different from the public at large" nor that their "interest is narrow and more parochial that the government's."

Without this, intervention is appropriate only where an applicant makes "a strong showing" that the government "has committed misfeasance or nonfeasance in protecting the public." *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 922 (8th Cir. 2015). In other words, a "clear dereliction of duty." *Chiglo*, 104 F.3d at 188. Proposed Intervenors fail on that score as well. They assert (at 14) that they have "reasons to believe" or "expect[ ]" Defendants will not defend the Rule. This is plainly inadequate to overcome the presumption. And the expectation has proven false; Defendants have moved to dismiss. If "merely disagreeing with the litigation strategy or objectives of the party representing [the proposed intervenor]" "cannot rebut the presumption," *Chiglo*, 104 F.3d at 188, then *speculating* (incorrectly) what the litigation strategy or objectives of Defendants might be is even farther afield.

As Proposed Intervenors have made no showing to overcome the presumption of adequate representation, their motion to intervene should be denied.

## IV. The Court Should Deny Permissive Intervention.

The Court should deny permissive intervention for similar reasons. "The decision to grant or deny a motion for permissive intervention is wholly discretionary." *South Dakota*, 317 F.3d at 787 (citation omitted). When a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact," then "the principal consideration . . . is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Id.* Even still, the Court may properly rely on considerations beyond undue delay and prejudice to

deny permissive intervention, including the adequacy of representation. *Id.* Additionally, a failure to establish standing also precludes permissive intervention. *See New Life Evangelistic Ctr., Inc. v. City of St. Louis, Mo.*, 2015 WL 2383499, at *9 (E.D. Mo. May 19, 2015).

As discussed above, Proposed Intervenors' failure to make a showing to overcome the presumption of adequate representation counsels against their inclusion as an intervenor defendant. When a Government defendant—represented by the Department of Justice—is defending a lawsuit, and a proposed intervenor fails to show that they "stand[ ] to gain or lose from the litigation in a way different from the public at large," that their "interest is narrow and more parochial that the government's," or that the Government "has committed misfeasance or nonfeasance," any intervention is inappropriate. The alternative view would open the floodgates to third-parties intervening as Defendants in any case where they "merely disagree[ ] with the litigation strategy or objectives." *Chiglo*, 104 F.3d at 188.

Permissive intervention is also inappropriate where, as here, the Proposed Intervenors have failed to establish standing. A simple desire to raise a defense is insufficient absent standing.

## CONCLUSION

The application for leave to intervene should be denied.

Dated: April 14, 2025

Respectfully submitted,

**ANDREW BAILEY**
ATTORNEY GENERAL

/s/Joshua M. Divine
Joshua M. Divine, #69875(MO)
*Solicitor General*
Reed C. Dempsey, #1697941(DC)
*Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
207 W. High Street
Jefferson City, MO 65101
Tel: (573) 751-0812
Fax: (573) 751-0774
Joshua.Divine@ago.mo.gov
Reed.Dempsey@ago.mo.gov

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE & COMPLIANCE

I certify that on April 14, 2025, a true and accurate copy of the foregoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, consistent with Federal Rule of Civil Procedure 5(b).

I further certify that the foregoing document contains 14 pages, exclusive of matters designated for omission, and complies with Local Rule 4.01(D).

/s/ *Joshua M. Divine*

*Counsel for Plaintiff State of Missouri*