IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STATE OF MISSOURI,

        *Plaintiff*,

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

        *Defendants*.

Case No. 4:25-cv-77-JAR

**DEFENDANTS' OPPOSITION TO PROPOSED INTERVENOR-DEFENDANTS'
MOTION FOR LEAVE TO INTERVENE**

      A coalition of two Midwest cities and a nonprofit organization have moved to intervene in this lawsuit, seeking to defend the rule that plaintiffs challenge, *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32976 (Apr. 26, 2024) ("Rule"). But while these proposed intervenors support the Rule, they have not satisfied the requirements for intervention. As a threshold matter, this Court lacks jurisdiction over this case, and the proposed intervenors lack Article III standing—both independent barriers to intervention. Moreover, intervention of right is limited to cases where a non-party has such a direct stake in the dispute that it is a real party in interest, a showing the proposed intervenors have not made here. Nor is permissive intervention warranted, as the proposed intervenors do not seek to advance a claim or defense common to those of the parties; rather, their desire to present arguments in support of the Rule at most justifies their participation as amicus curiae. The Court should therefore deny the motion to intervene.

**BACKGROUND**

      Earlier this year, the State of Missouri filed this Administrative Procedure Act ("APA") suit to challenge a Department of Health and Human Services ("HHS") rule that imposes additional

restrictions on certain uses and disclosures of health information protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The state claims that the Rule unlawfully interferes with its authority to investigate violations of state law and is otherwise arbitrary and capricious. *See* Compl. ¶¶ 90–115, ECF No. 1. Shortly thereafter, the Doctors for America ("DFA") and the cities of Columbus, Ohio, and Madison, Wisconsin, jointly moved to intervene as defendants. *See* Mem. in Supp. of Proposed Intervenor-Defs.' Mot. for Leave to Intervene ("Mot."), ECF No. 6. Defendants have since moved to dismiss this case on the grounds that the state lacks Article III standing to challenge the Rule. *See* Mem. in Supp. of Defs.' MTD ("MTD"), ECF No. 31.

## ARGUMENT

### I. This Court's lack of jurisdiction precludes intervention.

As a threshold matter, the proposed intervenors cannot intervene in a case over which this Court lacks jurisdiction. "[A]n existing suit within the Court's jurisdiction" is a "prerequisite" to intervention, *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 n.5 (5th Cir. 2016)—an "ancillary proceeding" that cannot "create jurisdiction where none exists," *Vill. of Oakwood v. State Bank & Tr. Co.*, 481 F.3d 364, 367 (6th Cir. 2007); *accord Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160–61 (2d Cir. 2012) ("[T]his rule is so deeply entrenched in our jurisprudence that it is an axiomatic principle of federal jurisdiction in every circuit to have addressed the question." (collecting cases)). Because no jurisdiction exists here, where the state lacks Article III standing, *see* MTD at 6–11, the Court "simply has no power to decide [the] motion to intervene," *see Vill. of Oakwood*, 481 F.3d at 367, and should therefore dismiss this case without resolving the merits of the proposed intervenors' motion, *see id.* ("In the absence of jurisdiction over the existing suit, a district court['s] … only option is to dismiss.").[1]

---

[1] At a minimum, the Court should resolve defendants' motion to dismiss before addressing the proposed intervenors' motion.

2

**II.     The proposed intervenors lack Article III standing to intervene.**

The proposed intervenors also have failed to independently establish Article III standing to intervene. On top of Rule 24's requirements, an aspiring intervenor must "clearly allege facts" that satisfy each element of standing: injury, causation, and redressability. *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 974 (8th Cir. 2014) (citation omitted). To establish standing, an aspiring intervenor that seeks to become a *defendant* must show that it (i) would likely suffer an injury in fact (ii) that would be fairly traceable to a judgment in the plaintiff's favor and (iii) that a favorable ruling would prevent. *Id.* at 975; *accord, e.g.*, *Pavek v. Simon*, 2020 WL 3960252, at *2–3 (D. Minn. July 12, 2020).

An injury in fact must be both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *accord FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (an injury in fact must be "real and not abstract," "actual or imminent, not speculative," and "personal," not "generalized"). The "mere *possibility*" of future injury does not suffice. *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) (emphasis added). Nor do vague, conclusory, or speculative allegations of harm. *Ark. Right to Life State Political Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998); *Hekel v. Hunter Warfield, Inc*, 118 F.4th 938, 943 (8th Cir. 2024); *Auer v. Trans Union, LLC*, 902 F.3d 873, 878–79 (8th Cir. 2018).

Perhaps reflecting their mistaken view that they need not demonstrate standing, *see* Mot. 4,[2] the proposed intervenors attempt to show an Article III injury in a single paragraph consisting of a jumbled collection of conclusory and boilerplate assertions of harm. *See id.* 5–6. This effort falls well short of what Article III requires.

---

[2] The proposed intervenors suggest that they need not independently establish Article III standing to intervene regardless of whether Eighth Circuit precedent says otherwise. *See* Mot. 4 & n.2. But a district court is bound by Circuit precedent unless and until the Supreme Court or the Eighth Circuit sitting en banc overrules it. *See, e.g.*, *Express Scripts, Inc. v. FTC*, 2025 WL 521812, at *3 (E.D. Mo. Feb. 18, 2025); *Valspar Corp. v. PPG Indus., Inc.*, 2017 WL 3382063, at *3 (D. Minn. Aug. 4, 2017); *United States v. Faust*, 2023 WL 4669028, at *5 (N.D. Iowa June 30, 2023).

Take, for example, the proposed intervenors' suggestion that the Rule's vacatur would undermine "public health" in Madison and Columbus, compromise "patients' trust" in those cities' health care providers, and interfere with DFA's ability to "promot[e] equity in health care." *See id.* at 5. Such ill-defined and entirely hypothetical harms cannot form the basis of an Article III injury, *see All. for Hippocratic Med.*, 602 U.S. at 381, especially where the proposed intervenors fail to explain how these conjured harms would "certainly" follow from the Rule's vacatur, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Similarly nebulous are the proposed intervenors' claims that, without the Rule, they would "need to spend time and money to comply with state disclosure requirements," to "allay the confusion of doctors," and to "provide resources to support community members," *see* Mot. 6—conclusory assertions supported by no specific *facts*, *see Nat'l Parks*, 759 F.3d at 974 (requiring "clearly allege[d] facts" to support standing). Without such facts, this Court cannot meaningfully assess, *e.g.*, whether the need to expend any resources is actual and imminent or whether the Rule's vacatur *itself* would require any of these purported expenditures.

Lastly, the proposed intervenors' reliance (at 5) on the Supreme Court's observation that standing is typically easier to establish where a regulation requires the plaintiff, rather than someone else, to act, *All. for Hippocratic Med.*, 602 U.S. at 382, is puzzling. Even if the Court were to ultimately vacate the Rule, despite defendants' objections, that would *eliminate* regulatory requirements, not impose them. The proposed intervenors cite no authority for the proposition that an entity is cognizably harmed by the *removal* of a regulatory obligation.

### III. The proposed intervenors are not entitled to intervene as of right.

Even if this Court had jurisdiction, the proposed intervenors have not established a right to intervene. Federal Rule of Civil Procedure 24(a)(2) allows an entity who is not a party to a lawsuit to intervene as of right only if, upon timely motion, it shows that (i) it has a recognized interest in the

4

lawsuit's subject matter, (ii) its ability to protect that interest would be impaired absent intervention, and (iii) its interest is inadequately represented by the parties. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1160–61 (8th Cir. 1995).[3] An aspiring intervenor bears the burden of establishing each requirement, and failure to satisfy any one of them precludes intervention of right. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1023–24 (8th Cir. 2003).

None of the proposed intervenors' asserted interests confer a right to intervene. To have such a right, an interest must be "direct, substantial, and legally protectable," *Union Elec.*, 64 F.3d at 116 (citation omitted), such that the aspiring intervenor "is a real party in interest in … the proceeding," *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005) (citation omitted); *accord, e.g., Huff v. Commissioner*, 743 F.3d 790, 796 (11th Cir. 2014); *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004). The scattershot interests the proposed intervenors assert come nowhere close to meeting that standard.

***First,*** the proposed intervenors cannot establish a sufficient interest in this litigation based merely on the fact that the Rule regulates certain DFA members and the health departments of Columbus and Madison, *contra* Mot. 9–10, and they cite no case supporting such a proposition. Nor do the proposed intervenors identify any adverse regulatory consequences that any of these entities would face if the Rule were vacated. While they vaguely assert that these entities devote "time and resources to HIPAA compliance and training," *see id.* at 9, they do not contend—much less submit any evidence showing—that the Rule's vacatur would require that they expend *additional* time or resources beyond what they would otherwise devote to HIPAA compliance. Nor is it relevant that, as a general matter, a covered entity may face liability for violating HIPAA's requirements, *see id.*, as the proposed intervenors do not suggest that vacating the Rule—thus lifting its requirements—would

---

[3] The proposed intervenors do not contend that a federal statute grants them an "unconditional right to intervene," so Rule 24(a)(1) is inapplicable.

5

*increase* the likelihood that any covered entity would be held liable for violating HIPAA.

**Second**, DFA cannot establish a direct and substantial interest in this litigation based on the threadbare assertion that it would need to expend resources on advocacy and education if the Rule were vacated. *Contra* Mot. 14. For one, DFA cites no authority supporting the proposition that voluntarily expending resources to advance an organization's "policy goals is sufficient to establish a legally protectable interest for purposes of Rule 24(a)(2)." *See Def. Distributed v. U.S. Dep't of State*, 2018 WL 3614221, at *3 (W.D. Tex. July 27, 2018); *cf. All. for Hippocratic Med.*, 602 U.S. at 370 ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing …."). But either way, vaguely alluding to the possibility of "expend[ing] some undefined amount of … resources if the Rule [were] vacated" gets DFA nowhere. *See Cigar Ass'n of Am. v. FDA*, 323 F.R.D. 54, 62–63 (D.D.C.); *see also, e.g.*, *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 839–40 (8th Cir. 2009) (requiring more than "remote," "speculative," and unsubstantiated assertions to satisfy Rule 24(a)(2)'s interest requirement). Whether an aspiring intervenor has a direct and substantial interest depends on a fact-intensive inquiry. *United States v. Tennessee*, 260 F.3d 587, 595 (6th Cir. 2001); *accord, e.g.*, *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996). Yet DFA submits no *facts* to support its claim that it would need to expend resources if the Rule were upended, instead citing only a declarant's conclusory assertion to that effect. *See* Mot. 12–13 (citing App'x 9, Decl. of Dr. Christine Petrin ¶ 17). Indeed, DFA never explains, *e.g.*, what specific resources it actually intends to expend on any relevant advocacy and education, much less whether any of those resources would otherwise be conserved or go to other purposes if the Rule were upheld. *Cf. All. for Hippocratic Med.*, 602 U.S. at 395 (rejecting theory that "standing exists when an organization diverts its resources in response to a defendant's actions," noting that "relaxing regulation" of a drug imposed no relevant "impediment to the medical associations' advocacy"). And it's hard to imagine what resources DFA would actually need to expend to educate its members on

6

the pre-Rule "legal landscape," as it claims it would need to do, *see* Mot. 13, given that the Rule's compliance date was less than four months ago. *See, e.g.*, *Liebert v. Wisc. Elections Comm'n*, 345 F.R.D. 169, 173 (W.D. Wisc. 2023) ("[The proposed intervenors] say that they will need to expend additional resources to educate Republican voters if the witness requirement is invalidated, but they point to no evidence … that such education will be needed if plaintiffs prevail."). Regardless, without sufficient facts, the Court has no way to meaningfully evaluate whether DFA's asserted interest is real and not merely theoretical. *See Metro. St. Louis*, 569 F.3d at 840 ("A court must carefully analyze whether the proposed intervenor's asserted interest really is bound up with the subject matter of the litigation."); *see also, e.g.*, *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 420 (E.D. Ky. Oct. 30, 2015) ("[T]he inquiry into whether the interest advanced is sufficiently substantial for intervention is very fact-specific, but the proposed intervenors have not provided support for their contention that their generalized interest … is sufficient to allow them to intervene as of right …." (internal citation omitted)).

*Finally,* the proposed intervenors offer no clear explanation how the disposition of this lawsuit will have any appreciable, real-world effect on their ability to "promot[e] the public health" or "promot[e] trust between patients and [health care] providers." *See* Mot. 10–12. Indeed, the proposed intervenors draw absolutely no connection between this litigation and these asserted interests, *see id.*, much less explain exactly how this case's resolution would impair their ability to protect those interests, *See Metro. St. Louis*, 569 F.3d at 839 ("[An aspiring intervenor] must … demonstrate that the subject matter of the action affects its interests in a direct rather than tangential way."); *Med. Liability Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) ("An interest that is contingent upon the occurrence of a sequence of events before it becomes colorable is … not sufficient to satisfy Rule 24(a)(2)." (cleaned up)); *see also Sierra Club v. McCarthy*, 308 F.R.D. 9, 11 (D.D.C. 2015) ("[A] legally protectable interest" must be so "direct and immediate … that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."). Therefore, the proposed intervenors'

7

asserted interest is too abstract and attenuated to establish the direct, substantial, and legally protectable interest needed to confer a right to intervene. *See, e.g.*, *Metro. St. Louis*, 569 F.3d at 839; *Med. Liability*, 485 F.3d at 1008 ("This interest is too remote and indirect to qualify as a cognizable interest under Rule 24(a)(2)."); *Vt. All. for Ethical Healthcare, Inc. v. Hoser*, 2016 WL 7015717, at *1–2 (D. Vt. Dec. 1, 2016) ("A concern in the abstract … is insufficient" to establish "a direct, substantial and legally protectable interest in the lawsuit.").

\* \* \*

In sum, because the proposed intervenors have not identified a direct, substantial, and legally protectable interest that could be impaired absent their intervention, they lack a right to intervene.

## IV. The proposed intervenors have not justified permissive intervention.

Permissive intervention should likewise be denied. Upon timely motion, a court may permit intervention under Rule 24(b) where the movant has a claim or defense that shares with the main action a common question of law or fact and where other factors, including whether intervention would "unduly delay or prejudice" the court's adjudication of the parties' rights, weigh in favor of intervention. *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787–88 (8th Cir. 2003). But even when these requirements are met, the court retains discretion to deny intervention. *Id.*

The proposed intervenors have not satisfied Rule 24(b)'s principal requirement, as they do not seek to advance a claim or defense that shares a common legal or factual question with those of the parties. "The words 'claim or defense" in Rule 24(b) "manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law[]suit." *Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring, joined by Burger, C.J., and Rehnquist, J.); *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (adopting the *Diamond* concurrence's interpretation of "claims or defenses" in interpreting those same words in Rule 23(a)(3)). That interpretation is "confirmed by Rule 24(c)'s requirement that a person desiring to intervene serve a

motion … 'accompanied by *a pleading* setting forth *the claim or defense* for which intervention is sought.'" *Diamond*, 476 U.S. at 76 (O'Connor, J., concurring, joined by Burger, C.J., and Rehnquist, J.) (quoting Fed. R. Civ. P. 24(c)). So, to permissively intervene, one must have "a legal claim or defense … founded upon" an "actual, present interest that would permit" an aspiring intervenor "*to sue* or *be sued*" in a lawsuit "sharing common questions of law or fact with those at issue in this litigation." *Id.* (emphasis added). But the proposed intervenors have no such claim or defense. And while they seek to intervene as defendants in this lawsuit, they do not suggest that the state could bring any APA claims challenging the Rule against them, nor is it clear what defenses the proposed intervenors could assert to such claims. Rather, it appears the proposed intervenors simply wish to assert various legal theories in support of the Rule's validity. *See* Mot. 15 ("Proposed Intervenors seek to take up … arguments" "defending the 2024 Rule …."). But mere "legal theories are not 'claims or defenses' …, as envisioned by Rule 24(b)." *United States v. Apple, Inc.*, 2012 WL 4513541, at *2 (S.D.N.Y. Oct. 2, 2012); *accord, e.g.*, *DeOtte v. Azar*, 332 F.R.D. 173, 186–87 (N.D. Tex. 2019) (denying permissive intervention because the aspiring intervenor-defendant "simply ha[d] no claim or defense," as interpreted in the *Diamond* concurrence).[4]

Other factors also counsel against permissive intervention. First, there are no underlying factual issues that the proposed intervenors could help to develop in this APA matter, which raises pure questions of law that would need to be resolved on the basis of the administrative record if the Court were to reach the merits. *See, e.g.*, *Britto v. ATF*, 2023 WL 11957195, at *5 (N.D. Tex. Apr. 14, 2023) (denying permissive intervention where the proposed intervenor could not "contribute to the

---

[4] *See also, e.g.*, *United States v. Microsoft Corp.*, 2002 WL 319366, at *2 (D.D.C. Feb. 28, 2002) (denying permissive intervention because the court could find no "assertion by [the aspiring intervenor] of a cognizable claim fitting the parameters of Rule 24(b)(2)," as interpreted in the *Diamond* concurrence) (cleaned up)); *Choice Fashion, Inc. v. ATF*, 2009 WL 1658047, at *2 (E.D. Mich. June 10, 2009) (same); *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, 2011 WL 13221046, at *3 (N.D. Ga. Nov. 1, 2011) (same); *Laube v. Campbell*, 215 F.R.D. 655, 659 (M.D. Ala. 2003) (same).

development of [any] underlying factual issues" in an APA case raising pure questions of law). And to the extent the proposed intervenors wish to be heard on any of the issues raised in this litigation, they are free to seek this Court's leave to participate as amicus curiae, a request that defendants would not oppose. *See, e.g.*, *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 2012 WL 3065517, at *6 (E.D. Mo. July 27, 2012); *Louisiana v. Burgum*, --- F.4th ---, 2025 WL 971729, *4 (5th Cir. Apr. 1, 2025) ("[W]here the movants express a unique view offered by neither party that they want heard, the proper procedure is to move to appear as *amici curiae*, not to move to intervene." (cleaned up)); *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475–76 (6th Cir. 2000) ("[T]he concerns of an entity seeking intervention can be presented with complete sufficiency through [amicus curiae] participation.").

## CONCLUSION

The Court should deny the proposed intervenors' motion to intervene.

Dated: April 14, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On April 14, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                              */s/ Jody D. Lowenstein*
                                              JODY D. LOWENSTEIN
                                              Trial Attorney
                                              U.S. Department of Justice